We're all here, it's Hanson v. Lumley Trucking. Council? Good morning, Officer. Good morning. Given the fact that we're close to the lunch hour, I'm quite aggrieved, but it may be the best strategy, but we can't make any promises. We won't hold you then. Thank you, sir. I'm David Liefers, I'm from Jacksonville, and I'm here on behalf, obviously, of the appellate, Leslie Hanson. In context, Leslie's brother, Brian, was employed by Lumley Trucking, was involved in a third party, a collision with a third party, and as a result of that, he sustained injuries, lived about ten days, and then he died. We settled with the third party for their coverage of $50,000, and we initiated a debt action, obviously in Madison County, to determine and to argue that, in fact, the $40,000 provision as it relates to Lumley Trucking's policy was ambiguous, and we were entitled to stacking, and stacking up to $1 million. Our courts, particularly this court, the Supreme Court, have admonished us that we need to look at this on a factual, case-by-case basis, and so I think it's extremely important to sort of track the policy provisions that are being argued in this particular case. It's going to be a dumb question, but tell me why the number 46 is in the policy to cover 25 vehicles. That's not a dumb question. I asked that question myself the first time I ever read this policy. And it looked, look, look, to me, it's nothing more than an insurance company using one page versus 13 pages on item two of the debt sheet, and it's a shorthand method of just simply saying we have 25 vehicles, and they all have $40,000, and if you refer to item three of the debt sheet page, and they're all charged a separate premium. You know, very frankly, you know, one of the reasons I think we have to look at this on a case-by-case basis is the policy language differs, and this policy language is unique, and it's not like anything I've seen in any of the case law in Illinois, and I suspect counsel hasn't either, otherwise we would both be citing those cases. But to start out, Your Honors, just very simply with the Illinois under insurance notice coverage form, the schedule which says schedule limited insurance, each accident, it's blank. It goes on to say information required to complete the schedule, if not shown, will be shown in the declarations. That goes on to say coverage, we will pay all sums insured as legally entitled to recover as compensatory damages from the owner or driver of an underinsured motor vehicle. There are two other provisions in the underinsured motor's coverage and door signs of debt are arguably clear. Limit of insurance, regardless of the number of covered autos, etc., the most we will pay for all damages resulting from any one accident is the, quote, underinsured motor's coverage shown in this endorsement. Well, of course, the problem with that is that there is no such limit shown in the endorsement, and the reference is made to the debt page. And then finally, there is the other insurance provision, which basically says that if there is other applicable insurance available under one or more policies or provisions of coverage, then it goes on to ask for recovery under all coverage forms or policies combining the equal but not exceeding the highest questionable limit. Of course, we know that the purpose of another insurance clause is to make sure that the insurance company doesn't pay its disproportionate share of any type of recovery. So, the underinsured's endorsement then refers us to the debt sheet. Well, this is where it becomes even more confusing, because as your honor has already remarked, the reference under underinsured motorists is to a number 46. There's one number, and then it indicates $20,000, and then it says included. But there's other interesting language on that page as well. This policy provides only those coverages where a charge is shown in the premium column. Each of these coverages will apply only to those autos shown as covered autos. Autos are shown as covered autos for a particular coverage by the entry of one or more of the symbols in the covered auto section. All right, so what is a covered auto? Well, now we have to go to another section, and that's basically the trucker's auto section, or coverage form section. And it says, item 2 of the declarations, again referring to the declarations, shows the autos that are covered autos for each of your coverages. The following numerical symbols describe the autos that may be covered autos. Symbols that are next to the coverage of the declarations designate the only autos that are covered. And that's defined in the 46 specifically described autos, only those autos described in item 3 of the declarations, for which a premium charge is shown, and that's what it means. If one was to look at the under-insurance endorsement, and you see that there's no limited liability except for, it specifically refers to this multi-page declaration sheet, that that multi-page declaration sheet has the initial page, uses symbols for various coverages in the covered autos, and then specifically in item 3 of the deck sheet, there are references to the specific motor vehicles, including the one in which my decedent was operating. It doesn't take any creativeness to look at that policy and determine that there is an ambiguity. Now, all of the stacking cases in Illinois pretty much all take back to Bruder. And the pretty clear distinction in Bruder, that arises in Bruder, and is followed up in the line of cases under Bruder, is how many times is the limit of liability shown on the policy? And are you with me so far? And in this case, in this policy, the limit of liability is only shown once. And that's been the distinction all along in these cases. And I understand that. If you look at the policy itself, you're absolutely right that on item 2 of the deck sheet, there is a designation, covered autos with one number, and then it says $40,000, period. But what does that policy, what does that mean under that policy? What that means under this particular policy, when you look at item 3 of the deck sheet, is that that's 25 separate vehicles. So my position is, Your Honor, this is just, as I argued for Judge Harmon at the trial court level, this is basically nothing more than a shorthand method employed by the insurance company, as opposed to listing Mack Truck 1, Mack Truck 2, Mack Truck 3, and then separate coverages like that. Okay. And in previous cases where we've had the issue of stacking, the same kind of thing has arisen. I agree this is a different kind of a form. But, you know, claims that just because of premiums shown have been rejected to show stacking. The language, there was a series of cases where the language that said coverage applies where a premium is shown. There was a period of time where, I think Yates was one, there were a couple of cases that said that's stacking. And I think the Supreme Court ultimately rejected that and reversed those cases. So isn't that really what we're doing here? It's a shorthand version of saying the same thing. They could have listed 25 autos right under that with the limit of liability only listed once. The only difference is it's on a different sheet. Well, but they didn't. And what they did is they chose a method wherein they just simply, by referencing the number, they talked about 25 separate vehicles. They also could have listed the number 46 and then put 40,000 25 times too, which wouldn't seem to me to be very logical. The difficulty is that the insurance company chose this language. And this language is, in the very least, confusing. And when you look at it, I think it's reasonable to argue that this, in essence, is no different than if they listed the 25 different vehicles and listed 40,000, Your Honor, with regard to each one of those vehicles. And that's our position. And if it's unclear, if it's ambiguous, then that's what should be held against the insurance company. With regard to the other issues that are raised in the brief, and that's simply the limit of liability clause, as the court knows that if there's an ambiguity with the pre-final deck sheet, the limit of liability clause, the general limit of liability clause, if it conflicts, is basically rendered meaningless. It creates an ambiguity, and that's pretty consistent with case law. The defendants below argued the Columbia mutual case, which is, I believe, a Rule 23 case out of this court. Right, which means it can't be cited and can't be argued. Because it's not, as a non-published case, as a Rule 23 order or a summary order, it's not citable under the rules. I'll be more than happy not to argue the Columbia case, Your Honor. Thank you. Actually, what you both cited was a Westlaw site to an original opinion that decided that that policy did not stack. The Rule 23 order said it did stack. So, I saw that. Anyway, so I won't argue Columbia mutual. But they also cited the First District case of McElmo v. Safeville Insurance Company, with regard to the proposition that the other insurance clause in this particular contract, in the general casualty contract, basically takes care of the problem and prevents stack. We respectfully disagree with that. The McElmo case, Your Honors, basically talked in terms of, or spoke in terms of, an under-insurance policy and essentially the other insurance clause. And the court held, the First District held in that particular case, that where the limits of liability clause incorporate an ambiguous debt sheet, those clauses are tainted by the ambiguity and do not prohibit stack. The limits of liability in our particular case, as far as our position is, the limits of liability provision specifically references the endorsement. The endorsement specifically references the debt sheet. The provisions of the debt sheet are ambiguous. The McElmo court also held that a general anti-stacking clause cannot overcome the ambiguity in a more specific debt sheet of a policy. But then McElmo went on to focus on the other insurance clause, and there is, as I've already indicated to Your Honors, there is obviously another insurance clause in this particular policy. And doesn't that other insurance clause prohibit stacking? I believe their position is that the other insurance clause prohibits stacking in this particular case. And McElmo, in that case, with the language of that policy, held that since it was clear that it, in fact, barred stacking. McElmo never reached the issue as to whether or not there were any ambiguities in that particular clause. The last very paragraph essentially says that no authority was cited, so therefore we're not going to reach the issue. It's our particular, it's our position in this particular case, Your Honors, is that this particular clause, as language different from the McElmo decision, is itself ambiguous. For example, it starts out in McElmo where they found that it barred stacking. The language was, if there is other similar insurance. Here it is, if there is other applicable insurance. Also, it makes reference, our particular clause, General Cavalry Clause makes reference to basically other coverages and provisions of coverage and coverage forms. Obviously, that's intended, for example, if you have a MedPay payout, and this policy did not have MedPay, but if you have a MedPay payout, obviously then, because the policy says our recovery will be reduced from payment from other sources, that may very well reduce the amount that ultimately they're responsible for. But it's our position, Your Honor, that the McElmo decision is not on all fours with what we have here, and we're asking that the court reverse the determination of Judge Harmon that denied our request for summary, or I'm sorry, judgment on the pleadings and allow the defendants to send it back down. Thank you. I told you I'd be brief. Counsel, correct me, please. That's good. Counsel? Please, the court, my name is Mike Badesky. I'm representing the Appalese Longleaf Trucking and General Casualty Company of Illinois. As this court is well aware, we have a stacking case, and the basis of the stacking is the deck sheet. Just to get one thing out of the way right away, because we had a question about this, number 46, the only thing that's a little bit different about this policy than some of the other stacking cases is that this is a commercial trucking policy, so it's not like an individual policy where somebody might have one car or maybe two or three cars at their house, and you can put all those vehicles on one deck sheet. In this particular situation, Longleaf Trucking, they own a total of 62 vehicles, but they're not all the same type of vehicle. You'll see this on the schedule of covered vehicles. The record starts C138, Schedule of Covered Autos. Just by background, there's tractors, there's trailers, there's dump trucks, and there's dump trailers. So you're not going to want, for example, and the different coverages that are available, you're not going to want collision coverage necessarily on a dump tractor or a dump trailer. You're not going to want uninsured or underinsured motorist coverage. You don't want to pay for that for a trailer, because a human being's not going to be riding a trailer. I mean, that's for all items in the trucking business. And so the reason why there's different numbers for different coverages is because those numbers specify a certain coverage for a certain type of vehicle. In other words, you'd want the uninsured or underinsured for the tractor, because the tractor's going to have an operator, it's going to have a human being that could potentially be injured, so you'd want the UM or UIM coverage on that. In the same way, you're not going to want UM or UIM, like I said, for the trailer, because you're not going to have a human person operating the trailer. The driver's going to be operating the tractor. So that's the reason why there's these numbers, because there's different vehicles in this fleet. But having said that, really the analysis here is the same analysis as if it were just a regular auto policy, an individual would die. Because the way that the policy is set up in terms of the deck sheet, the endorsements, the language of the policy, it really tracks the case law with regard to stacking. I mean, there's nothing really unique or unusual in terms of the policy language that's here. The only thing that's a little bit unusual is the deck sheet, because again, we've got these different types of vehicles. But basically, what it really comes down to, Your Honors, is the limit of UM, UIM coverage that's listed. It's listed only one time and one time only. And that's right there on the deck sheet, item two, schedule of coverages and covered autos. It lists that number for underinsured motorists, it lists that number 46, but it says the limit at $40,000. Also, and this wasn't mentioned by counsel, it says the most we will pay for any one accident or loss, and that's next to the limit, 40,000. And that's at C136 in the record. And that's really the critical issue here, because again, there's nothing ambiguous about the policy language that hasn't really been construed by other courts, this court or the Supreme Court. The UIM limit is listed only one time. It references 25 vehicles would have that coverage, but the amount is listed only one time. It's not listed 25 times, it's listed only once. And also, like I said before, the most we will pay for any one accident or loss is $40,000. Now, back in the, and again, in the policy, we've got the endorsement for the underinsured coverage, and there's an anti-stacking clause in there. Again, this clause has been construed before by other courts. Regardless of the number of covered autos, insured, premiums paid, claims made or vehicles involved in the accident, the most we will pay for all damages resulting from any one accident is the limit of insurance for the underinsured motorist coverage shown in this endorsement. And that's at C174 in the record. There's no amount shown in the endorsement. It refers you back to the deck sheet. And like I said before, the deck sheet is listed only once at $40,000. So we have the classic lineup here that's been construed by the Supreme Court going all the way back to Bruder, carried forward into the more recent case of Hobbs v. Hartford. We've got an unambiguous anti-stacking clause. We've got the underinsured motorist limits listed only once on the deck sheet. That means there is not stacking. Now, the reason that it's given that counsel has argued that, well, the number 46 on the deck sheet refers to 25 vehicles, so that means that you're supposed to read it, $40,000 listed 25 times. Well, it's not listed 25 times. It's listed one time. I mean, counsel wants you to go through this exercise where you don't read what's there. You sort of imagine that, well, because they use the number 46 as a shorthand way to reference these other vehicles, somehow you read the policy as listing that number 40 25 times for each vehicle. That's not in the policy. No case in Illinois allows you to just completely read different language that isn't even there. In fact, the cases go the other way. So it's very critical. Both this court has found this and the Supreme Court has found it's very critical how many times the number is actually listed, the UIM number is listed, and it's listed only once. In terms of the other argument that was made, well, you know, we've got these 25 vehicles and there's a premium amount shown for each of the 25, but that argument was rejected by the Illinois Supreme Court. In Hobbs v. Hartford, you had a situation where there was two premiums shown for each of the insured vehicles, but the amount of UIM coverage was listed only once, and the Supreme Court says that does not stack. Even though you have two premiums listed on the deck sheet, if you only list the UIM coverage once, there's no stacking allowed. So that's what the Supreme Court analysis was on that, most recently in Hobbs v. Hartford. And as was mentioned before, Your Honors, all these cases of stacking based on the deck sheet, they all come back to Bruder v. Country Mutual, tracing it back to that case. And sure enough, Bruder, and we know this because in the appendix to the Supreme Court opinion, you have the deck sheets you can look at. What was critical, and the Supreme Court mentioned this, in Bruder that you've got separate premiums listed for two different vehicles on that deck sheet, but the amount of UIM coverage was listed only one time. And the Supreme Court looked at that and considered the argument, well, a couple different premiums, why don't we stack? The Supreme Court said no. It said the only reasonable interpretation is that the policy provides only $100,000 of liability for bodily injury occasioned to each person insured, no matter how many vehicles are listed in the column arrangement, and no matter how many premiums are paid. So that goes all the way back to the Supreme Court, where you had that columnar sort of arrangement, and some of those other cases where this Court has had, where you've got multiple coverages listed above each column, and that's the classic stacking arrangement based on the deck sheet. In this case, if all 25 vehicles were listed right below where it says $40,000, that would be pretty much exactly like Bruder. Yeah, right. The only difference is here they're listed on a separate sheet of paper. Yeah, exactly, it doesn't make any difference, because that number, the key number, 40,000, is listed only one time, so it wouldn't make any difference under Bruder. So that's the only reasonable interpretation, is that there is no stacking here, because that's what the Supreme Court held going all the way back to Bruder, and even more recently there in Hobbs. Counsel cited a case from this Court, Johnson v. Davis, but that case really doesn't apply, because in the deck sheet in the Johnson case, the liability limit was listed four separate times on the deck sheet. Here it's listed only one time, and this Court mentioned what's really important in the analysis, how many times the coverage limit is listed.  because it was listed multiple times, and that allows the stacking. We just don't have that here. I apologize, Your Honors, for that Columbian Mutual, I apologize for that, I won't talk about that case. And there's another reason why they don't stack. I guess I'm butchering the, I thought it was McLean, I'm not sure I'm pronouncing the name correctly, versus Safeco. This one is a different approach to stacking analysis, and basically this, this is how the Court relied on the other insurance clause, and that precluded stacking in this McLean case. Kind of a different analysis, but here also in the general capacity policy, we have this changes in conditions section, which includes the other insurance language, which to me anyway, it looks basically identical to the McLean other insurance language in that policy, so that's an independent basis to deny stacking here, based on the changes in the other insurance language, which tracks the other insurance language in the McLean case. Just to wrap up here, your honors, although it is true that this policy is somewhat different because it's a commercial trucking policy, the key elements of the policy, which is the language, which is the deck sheet, in terms of listing the amount of underinsured motorist coverage one time, and also the key anti-stacking language in the underinsured endorsement, that policy has been construed before, and the analysis I believe the trial court made by Judge Harrison was correct in interpreting the language of the policy, so I would ask this court to affirm the trial court. Thank you very much. Thank you, counsel. Counsel? Once counsel did, I often watch names including the name of the trial judge in this particular case to which I apologize to Judge Harrison. It was my first appearance in front of him, and I hope it's not my last. Anyway, be that as it may, your honors, there is a factual distinction between the deck sheet in this policy and the deck sheet in Bruder and the deck sheet in Hobbs. In those particular cases, the insurance company decided to list each automobile, whether it's vertical or horizontal, each automobile separately. And then what they decided to do was to list the limit of liability once. Well, that's not what this insurance company did in this particular policy. It listed all 20 live vehicles once by using a code designation, and very frankly, then it listed, as you would expect, the $40,000 once. I think that's a key factual distinction. Each case that denies static generally has multiple vehicles listed and generally has multiple limits of liability listed. This one doesn't. It has a symbol that stands for 25 motor vehicles, and that's a factual distinction that I think is important, but I don't know. Finally, with regard to the other insurance argument, I basically addressed that in my original presentation. The policies are different. The language employed are different. It wasn't suggested apparently in McAmeel or however we want to pronounce it today. It wasn't suggested or argued or accepted by the appellate court the argument that it was ambiguous. The limited liability clause in this particular case and the other insurance clause in this particular case are all part of the underinsured motorist endorsement form. That form specifically refers to the debt sheet, which I believe is ambiguous, and I believe that that not only paints those other provisions in the policy of the underinsured motorist endorsement, but, Your Honors, I also believe that those provisions, particularly the other insurance, is ambiguous in and of itself. Together, I think the policy ought to be construed in favor of the insured or in favor of the underinsured. Thank you. I apologize to the court. I got the flu and did the best I could to get here today, so I had to even have somebody drive. I hope you feel better. Thank you. We appreciate the briefs and arguments. The council will take this case under advisement. The court will be in recess until 1.20 and continue our work.